CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 17 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| PATRICK DOYLE, | ) | CIVIL ACTION NO. 7:11CV00256 |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | |
| JOHN DOE, WARDEN, ET AL., | ) | By: Samuel G. Wilson |
| | ) | United States District Judge |
| Defendant(s). | ) | |

Patrick Doyle, a federal inmate proceeding pro se, filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), alleging that officers Brandenburg, Andrew, Anderson, and Jerrell, John Doe Warden, and John Doe Captain at United States Penitentiary Lee County ("USP Lee") violated his constitutional rights by physically assaulting him after he cut himself with a razor, by failing to feed him on several occasions, and by making verbal threats against him. He seeks monetary damages and a preliminary injunction directing, among other things, that he be immediately transferred to an "FCI" (Federal Correctional Institution).[1] Because Doyle admits that he has not exhausted his administrative remedies within the Federal Bureau of Prisons ("BOP") regarding any of these alleged violations, the court concludes that his complaint must be summarily dismissed, pursuant to 42 U.S.C. § 1997e(a), and that his request for interlocutory injunctive relief must be denied.

I

Doyle alleges the following events on which he bases his claims. Doyle, age 27, is sentenced to life in prison and has been incarcerated in federal prison since 2006. On September 24, 2010, while he was an inmate at USP Lee, Lieutenant Brandenburg saw through the cell door

---

[1] Doyle is currently incarcerated at the United States Penitentiary Hazelton ("USP Hazelton") in Bruceton Mills, West Virginia.

window that Doyle had cut his wrist and was sitting down. He asked Doyle what he had used to cut himself, and Doyle said, "A razor," and pointed to the floor. The officer ordered him to "cuff up," and Doyle came to the cell door in compliance with cuffing procedures. But then, the officer yelled, "Get down on the floor and put your hands behind your back." Doyle did so. Officers came into the cell, held Doyle down with a shield, and jumped on his back and legs, crushing his face into the concrete, suffocating him. When Doyle asked why they were doing this, the officer punched him repeatedly with a closed fist, breaking his glasses, and then kicked him in the head, shouting, "Stop resisting," although Doyle says he was not resisting.[2] A disciplinary charge brought against Doyle for the incident was later dismissed.

Doyle also asserts that Officer Anderson used excessive force in cuffing him in violation of BOP policy, apparently referring to the September 24, 2010 incident; that John Doe Captain did not intervene during the assault or stop officers from harassing him thereafter, and on some unspecified date, made Doyle "strip naked" in the presence of a female nurse; and that John Doe Warden took no action in response to the assault incident. Finally, Doyle alleges that officers Jerrell and Andrew refused to feed him on several unspecified dates, threatened to assault him or to have other inmates harm him, and ordered him to assault his cell mate.

## II

The Prison Litigation Reform Act requires that inmates exhaust all available administrative remedies *before* filing an action challenging prison conditions. 42 U.S.C. § 1997e(a). It is well established that this exhaustion requirement is mandatory, Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 677 (4th Cir. 2005), and that the

---

[2] An incident report that Doyle attaches to his complaint indicates that on September 24, 2010, officers reported that Doyle had cut both arms with a razor from wrist to elbow, had smeared blood all over his face and upper body, had placed the razor in his mouth, and when ordered to comply with cuffing procedures, had jumped up and down and then dropped to the floor to do pushups. (ECF No. 1-3 at 1.)

2

requirement "applies to all inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 532 (2002). Failure to follow and complete the required procedures of the prison's administrative remedy process will bar an inmate's civil rights lawsuit. Woodford v. Ngo, 548 U.S. 81, 90 (2006); Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1214 (10th Cir.2003), abrogated on other grounds by Jones v. Bock, 549 U.S. 199 (2007) (recognizing that § 1997e(a) exhaustion requirement applies to claims under Bivens).

However, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008); see also Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004) ("The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." (internal quotation marks omitted)). "[W]here failure to exhaust is apparent from the face of the complaint," the court may summarily dismiss the complaint on that ground. Anderson, 407 F.3d at 682.

Doyle concedes on the face of his complaint that he did not pursue any available administrative remedies while at USP Lee and asks the court to "waive" the exhaustion requirement. In support of this waiver request, he asserts that he feared filing grievances would result in another assault by officers or some other form of retaliation. He alleges no factual support for this fear, however.[3] His vague apprehensions do "not constitute the kind or degree of

---

[3] Doyle describes several incidents that allegedly made him fearful. He alleges that he had nightmares about USP Lee officers attacking him again or calling USP Hazelton to order officers there to assault him or poison his food. He also refers to an unrelated incident in which he filed a BP-8 complaining that an officer searching his cell had thrown a shoe and hit him on the leg; when other officers advised him to keep the incident to himself or rumors could start, Doyle took this advice as a threat and withdrew his BP-8. Finally, he refers to an incident in which an officer (who is not named as a defendant in this action) was suspended for providing an unspecified inmate with a copy of a protective custody roster that included Doyle's name. Thereafter, Doyle claims, he was threatened and harassed by

3

prevention or obstruction after which one might reasonably conclude that [the plaintiff] made a reasonable attempt" to exhaust his administrative remedies in compliance with § 1997e(a) and was prevented by official action from doing so. See Thomas v. N.Y. State Dep't of Corr. Servs., No. 00 Civ. 7163(NRB), 2003 WL 22671540, at *3 (S.D. N.Y. Nov. 10, 2003) (unpublished).

Apparently as another ground for waiver of the exhaustion requirement, Doyle complains that for several years, his requests to unidentified BOP officials for mental health "assistance" have been denied.[4] Doyle mentions some disturbing, undated incidents that he evidently attributes to his mental health issues.[5] His allegations offer no indication, however, that his mental health problems interfered with his ability to understand and utilize the prison's administrative remedies procedures as required under § 1997e(a) before filing his current claims against USP Lee officials.

For the stated reasons, the court concludes that Doyle's admission on the face of his complaint that he did not exhaust administrative remedies before filing this action, and his failure

---

unspecified prison staff and inmates. None of these incidents supports a realistic concern that pursuing the established grievance procedures regarding the claims raised in this complaint would result in physical harm or other forms of retaliation against Doyle at USP Hazelton.

[4] Doyle does not allege that the named defendants in this Bivens action were personally involved in denying his requests for mental health treatment. Moreover, he admits that he has not yet exhausted administrative remedies as to the alleged denial of mental health treatment. For these reasons, the court will not construe his allegations as stating a separate claim in this lawsuit regarding denial of mental health treatment.

Doyle also mentions the Federal Tort Claims Act and suggests that prison officials have negligently failed to provide for his mental health needs. Before bringing any claim under the FTCA, however, an inmate must exhaust prescribed administrative procedures. See Kielwien v. United States, 540 F.2d 676, 679 (4th Cir. 1976) (finding that plaintiff in FTCA case has burden to prove completion of specific administrative steps required by the statute). Doyle offers no evidence whatsoever that he has fulfilled these administrative requirements.

[5] Doyle alleges that because unidentified mental health staff and officers ignored his pleas for mental health care, he cut his own forearm to the bone and required staples to close the wounds; when officers left him unattended, the staples "came out," and Doyle "almost bl[ed] to death," but still did not receive mental health treatment. He also asserts that he went on an eight-day hunger strike because he was not receiving proper mental health treatment.

4

to offer any indication that official actions prevented him in any way doing so, are sufficient grounds for summarily dismissal of the action without prejudice, pursuant to § 1997e(a).

### III

The court also concludes that Doyle's motion for interlocutory injunctive relief must be denied. In his motion, he asks the court to order the defendants to: (a) transfer him to "FCI Sandstone" or other "medium" to prevent retaliation; (b) compensate him for breaking his glasses and losing his commissary purchases; (c) place him in a single cell until he is transferred to prevent officers from housing him with a cell mate ordered to kill him; (d) provide meals inspected by officers before serving; (e) provide twice weekly visits with mental health professionals and an increased dosage of Wellbutrin; and (f) provide him with copies of incident reports about the incident at USP Lee and the incident in which the officer provided the protective custody to another inmate.

The USP Lee officers named as defendants in this lawsuit are not appropriate parties from whom to seek the relief Doyle requests in (a), (c), (d), and (e), because he is no longer housed at the facility where these officers work. He offers no evidence whatsoever that these defendants have any authority over assigning him to a particular prison or cell type or ensuring that he receives particular meals or types of medical treatment at USP Hazelton.

Moreover, Doyle's other requests are actually seeking compensatory damages (b) and production of documents in discovery (f), rather than interlocutory injunctive relief. Because he cannot proceed with his claims under Bivens at this time, given his failure to exhaust available remedies before filing suit, he is not entitled to damages or discovery.

Finally, because his claims are barred under § 1997e(a), Doyle cannot demonstrate likelihood of success as required to warrant interlocutory injunctive relief under the four-part

5

standard in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 374 (2008).[6] Similarly, because his failure to exhaust bars his litigation of his claims at this time, he cannot demonstrate that he has a colorable claim or exceptional circumstances so as to warrant court-appointed counsel in this civil action. See Gordon v. Leeke, 574 F.2d 1147, 1173 (4th Cir. 1978); Cook v. Bounds, 518 F.2d 779 (4th Cir. 1975). For the stated reasons, his motions for interlocutory injunctive relief and appointment of counsel will be denied.

## IV

For the reasons stated, the court dismisses Doyle's complaint without prejudice for failure to exhaust administrative remedies as required pursuant to 42 U.S.C. § 1997e(a) and denies his pending motions. An appropriate order will issue this day.

The Clerk will send copies of this memorandum opinion and accompanying final order to plaintiff.

ENTER: This 17th day of June, 2011.

United States District Judge

---

[6] Under the Winter standard, the party seeking a preliminary injunction must demonstrate that: (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." 129 S. Ct. at 374. Each of these four factors must be satisfied before interlocutory injunctive relief is warranted. Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 347 (4th Cir. 2009), vacated by, remanded by, cert. granted, 130 S. Ct. 2371 (2010), reaffirmed in part, remanded by, 607 F.3d 355 (4th Cir. 2010).